UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
(Filed Electronically)

CRIMINAL ACTION NO. 1:11CR-13-R
UNITED STATES OF AMERICA,                                                    PLAINTIFF,

vs.

WAAD RAMADAN ALWAN,                                                          DEFENDANT.

## MOTION TO DISMISS COUNTS 1 AND 2

Comes the defendant, Waad Ramadan Alwan, by counsel, and moves the Court to dismiss Counts 1 and 2 of the indictment herein for lack of jurisdiction.

### Summary of Argument

Application of domestic penal laws such as 18 U.S.C. §§2332(b)(2) and 2332a(a)(1) to the civilian population of a country occupied by the United States is a violation of the Geneva Convention Relative to the Protection of Civilian Persons in Time of War. In enacting these statutes, Congress did not, and did not intend to, abrogate this treaty.

### Facts

Mr. Alwan is charged in Count 1 of the indictment herein with conspiring to murder United States nationals in Iraq in violation of 18 U.S.C. §2332(b)(2) by planting improvised explosive devices ("IEDs") in roads. While the indictment alleges that the conspiracy occurred "[f]rom in or about 2003 through 2006", no act is alleged to have occurred after

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

April 5, 2005. At all relevant times, Mr. Alwan was a civilian citizen of Iraq living in that country. All acts are alleged to have occurred wholly within Iraq. Count 2 incorporates the same factual allegations as Count 1 and charges conspiracy to use an IED against a national of the United States while such national was outside the United States in violation of 18 U.S.C. §2332a(a)(1).

**Argument**

United States and Coalition armed forces (principally Great Britain) invaded Iraq on March 20, 2003. Baghdad fell on April 9, 2003. On May 8, 2003, the United States and Great Britain established the Coalition Provisional Authority ("CPA") which administered their military occupation of the country. On June 30, 2004, the CPA was replaced by the Iraqi Interim Government, a caretaker government created by the United States and Great Britain. It was not until May 3, 2005, following election of the Iraqi National Assembly, that true sovereignty was returned to Iraq when the U.S./British appointed Iraqi Interim Government was replace by the popularly elected Iraqi Transitional Government.

The Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287 ("Geneva Civilian Convention") regulated the conduct of the United States in relation to the occupied population of Iraq from March 20, 2003, when military operations and occupation commenced, to May 2, 2006, one year after the general close of occupying military operations when sovereignty was returned to Iraq on May 3, 2005. <u>Geneva Civilian Convention</u>, Art. 6. Accordingly, Mr. Alwan was

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

a protected person within the meaning of the Convention at all times relevant to Counts 1 and 2 of the indictment. Id. At Art. 4.[1]

Articles 64 and 65 of the Geneva Civilian Convention specifically detail when a protected person such as Mr. Alwan may be subjected to the penal laws of the United States (the occupying power) for acts committed in Iraq (the occupied territory). Article 64 of the Convention authorized the United States to repeal or suspend Iraqi penal laws it believed threatened its security or frustrated application of the Convention and to enact provisions necessary to protect its military forces and property and maintain the orderly administration of Iraq. Enforcement of any remaining penal laws was entrusted by the Convention to the Iraqi courts. Article 65 limits application of Article 64 by 1) requiring any new penal provisions "not come into force before they have been published and brought to the knowledge of the inhabitants in their own language"; and 2) prohibiting retroactive application of same.

Pursuant to the Convention, the CPA enacted a variety of penal provisions, including:

1. Regulation No. 1 providing that Iraqi institutions such as the court system remain in place.[2]

---

[1] Even if the Court finds that sovereignty was returned to Iraq on June 30, 2004, when the CPA was replaced by a U.S./British appointed caretaker government, the Convention would have continued to regulate the conduct of the United States in relation to the occupied population of Iraq until June 29, 2005. Under either interpretation, Mr. Alwan was a protected person within the meaning of the Convention at all times alleged in Counts 1 and 2 of the indictment.

[2] http://www.iraqcoalition.org/regulations/20030516_CPAREG_1_The_Coalition_Provisional_Authority.pdf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

3

2. A public notice prohibiting pronouncements or distribution of materials inciting violence against occupying forces.[3]

3. Order No. 7 providing that, with certain exceptions, the 1969 Iraqi Penal Code remained in effect.[4]

4. Memorandum No. 3 establishing procedures for applying criminal law in Iraq, especially Section 3 providing that the Iraqi Law on Criminal Proceedings of 1971 remained in force unless specifically modified by the Memorandum and Section 2(2) addressing the issue of jurisdiction:

> "[N]othing in this Memorandum shall deprive courts martial, military commissions or military tribunals of their jurisdiction as provided for under the laws of a Coalition member State or in accordance with the laws and usages of war."[5]

5. Order No. 13 (Revised) (Amended) establishing a Central Criminal Court of Iraq with national jurisdiction over "all criminal offenses assigned to it by the Administrator." It was to have jurisdiction over crimes committed in Iraq after March 19, 2003, and apply the 1969 Iraqi Criminal Code as modified by the CPA.[6]

6. Order No. 41 entitled "Notification of Criminal Offenses" and extending to the CPA and Coalition forces those provisions of Iraqi law requiring notification of public authorities of information involving attempts to commit explosives and firearms offenses.[7]

7. Order No. 3 (Revised) (Amended) prohibiting and providing penalties for, *inter alia*, the possession, transportation, distribution, or use of certain

---

[3] http://www.iraqcoalition.org/regulations/PN1.pdf

[4] http://www.iraqcoalition.org/regulations/20030610_CPAORD_7_Penal_Code.pdf

[5] http://www.iraqcoalition.org/regulations/20040627_CPAMEMO_3_Criminal_Procedures__Rev_.pdf

[6] http://www.iraqcoalition.org/regulations/20040422_CPAORD_13_Revised_Amended.pdf

[7] http://www.iraqcoalition.org/regulations/20030924_CPAORD41.pdf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

4

weapons, including IEDs such as those allegedly possessed and used by Mr. Alwan.[8]

Notably, no reference was made in any CPA order, memorandum, or regulation to possible jurisdiction under the domestic criminal law of any Coalition state. Indeed, Memorandum No. 3 specifically provided that the Iraqi Law on Criminal Proceedings of 1971 remained in force unless specifically modified by the Memorandum. Accordingly, any Iraqi, such as Mr. Alwan, reading Memorandum No. 3 was put on notice that he was subject to Iraqi law as amended by the CPA and that he could be tried in Iraqi criminal courts or by a military tribunal of a Coalition state. Nothing in Memorandum No. 3 suggested, let alone gave notice, that he would also be subject to the domestic civilian criminal law of the United States or trial in the United States for acts committed in Iraq.

These CPA orders and regulations clearly demonstrate that conduct such as that alleged in this case was to be prosecuted and punished in the Iraqi courts—or the military courts, commissions, or tribunals of the Coalition states—pursuant to the Iraqi Penal Code of 1969, as amended by the CPA.[9] In not extending domestic jurisdiction, the United States was properly acting in accordance with the Geneva Civilian Convention and the body of law

---

[8] http://www.iraqcoalition.org/regulations/20031231_CPAORD3_REV__AMD_.pdf

[9] Indeed, conspiracy to murder United States nationals outside the United States in violation of 18 U.S.C. §2332(b)(2), as alleged in Count 1, would also constitute unlawful murder of another under ¶405 of the Iraqi Penal Code of 1969, a crime adopted by CPA Order No. 41. Conspiracy to commit the offense is covered by ¶¶ 56 and 57 of the Iraqi Penal Code. Conspiracy to use a weapon of mass destruction in violation of 18 U.S.C. §2332a(a)(1), as alleged in Count 2, would also constitute a violation of CPA Order No. 3 prohibiting the possession of IEDs as well as ¶¶190 and 197 of the Iraqi Penal Code as adopted by the CPA and the conspiracy provisions of ¶¶56, 57, and 216.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

5

governing belligerent occupation.

The Geneva Civilian Convention is a treaty ratified well before passage of 18 U.S.C. §§2332(b)(2) and 2332a(a)(1). Treaties constitute law of the United States to be treated in parity with an Act of Congress. Breard v. Greene, 523 U.S. 371, 376 (1998). Congress is presumed to be aware of existing laws when it enacts a statute. Cannon v. University of Chicago, 441 U.S. 677, (1990). If Congress intended to abrogate or otherwise amend the Geneva Civilian Convention when it enacted 18 U.S.C. §§2332(b)(2) and 2332a(a)(1), it was required to clearly express such a purpose, South Dakota v. Bourland, 508 U.S. 679, 687 (1993) (Congress' intent to abrogate provisions of treaty must be clearly expressed); Cook v. United States, 288 U.S. 102, 120 (1933); Committee of U.S. Citizens in Nicaraugua v. Reagan, 859 F.2d 929, 936 (D.C. Cir. 1988) (courts should not lightly infer Congressional intent to abrogate a treaty absent a clearly expressed intent to do so). Yet, there is no indication that when it enacted 18 U.S.C. §§2332(b)(2) and 2332a(a)(1), Congress intended to abrogate or otherwise amend the Geneva Civilian Convention's prohibition against subjecting an occupied population to the domestic penal law of an occupying power in addition to their own laws and laws directly promulgated by the occupying power. Any reliance on the black letter of the statutes is inapposite. For example, 18 U.S.C. §2332(b)(2) criminalizes attempted killing of U.S. nationals outside the United States. Read in a vacuum without reference to applicable international law as embodied in ratified treaties of the United States, the statute appears to apply to opposing military forces who kill U.S. soldiers during lawful warfare, but no one would seriously interpret the statute this way. To do so

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

would violate the Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949, 6 U.S.T. 3316, T.I.A.S. No. 3364, which prohibits the prosecution or punishment of prisoners of war except for offenses for which the prosecuting power would prosecute its own soldiers. Id., at Arts. 87, 99, and 102. Likewise, it is just as unlikely that Congress intended the scope of 18 U.S.C. §§2332(b)(2) and 2332a(a)(1) to extend into the treaty bound arena of belligerent military occupation. Nothing in the legislative history suggests otherwise. Section 2332 was enacted as part of the Omnibus Diplomatic Security and Antiterrorism Act of 1986, Pub. L. 99-399, Title 12, §1202(a), August 27, 1986. The legislative history of the Act shows that Congress' concern was directed at protecting diplomatic personnel overseas, not punishing attacks on American troops in foreign countries under United States military occupation.[10]

Further evidence that Congress intended to leave the Convention intact is the fact that had it intended to extend the reach of domestic penal law to Iraqi civilians, the CPA would have specifically advised those civilians of that fact as required by the Convention. But, as discussed above, CPA Memorandum No. 3 only advised Iraqi civilians that they would be subject to Iraqi law as amended by the CPA and trial in Iraqi criminal courts or by a military tribunal of a Coalition state. Nothing in Memorandum No. 3—or any other CPA order, memorandum, or regulation—suggested, let alone gave notice as required by the Convention,

---

[10] Indeed, the United States itself has on occasion encouraged civilians in occupied territories to attack occupying troops. See for example, §1308 of Pub. L. 99-399 which encouraged Afgan civilians to attack occupying Soviet troops.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

that Iraqi civilians would also be subject to the domestic civilian criminal law of the United States or trial in the United States for acts committed wholly within Iraq.

In sum, the Geneva Civilian Convention applied to Mr. Alwan at all times relevant to Counts 1 and 2 of the indictment. That treaty is United States law and provides that the civilian inhabitants of occupied Iraq were subject to prosecution under local law and procedure as supplemented by the regulations adopted *and publicly announced* by the CPA. Neither the Convention nor any act of the CPA authorizes application of domestic United States penal law in Iraq for offenses committed within that country during its occupation. While Congress may have had the power to abrogate the Convention and extend application of U.S. domestic penal law to occupied territories, there is nothing to suggest that it intended to do so; and such intention may not be presumed.

/s/ Scott T. Wendelsdorf
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

8

## **CERTIFICATE**

    I hereby certify that on July 19, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the United States, Michael A. Bennett, Esq., Assistant United States Attorney; Bryan R. Calhoun, Esq., Assistant United States Attorney; and Lawrence Schneider, Esq., Attorney at Law; and to counsel for co-defendant Mohanad Shareef Hammadi, James A. Earhart, Esq., Attorney at Law.

                                                      /s/ Scott T. Wendelsdorf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808